IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| JAMES NEELY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:07-cv-0907-WKW [wo] |
| | ) | |
| BECHTEL CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

This cause is before the court on Defendant Bechtel Coporation's ("Bechtel") Motion to Compel Arbitration and to Stay Proceedings (Doc. # 13) filed on November 30, 2007.  The plaintiff, James Neely ("Neely"), responded (Doc. # 16) in opposition on December 19, 2007, Bechtel replied (Doc. # 19) on January 9, 2008, and Neely filed a sur-reply (Doc. # 20) on January 11, 2008.  The motion is fully briefed and ripe for consideration.  For the reasons set forth below, both Bechtel's motion to compel arbitration and motion to stay proceedings (Doc. # 13) are due to be granted in part and denied in part.

## I.    Facts and Procedural History

Neely began his employment with Bechtel on August 4, 1997.  (Def.'s Mot. Br. 2.)  At that time, he signed an agreement consenting to Bechtel's Employee Dispute Resolution ("EDR") Program, which provides in relevant part:

> I understand and agree that if I accept employment with Bechtel, the EDR Program shall be the exclusive means of resolving all disputes, claims or controversies ("claims") between me and the Company (or its officers, directors, employees or agents), which arise out of or relate to my employment

(or its termination).  Under the EDR Program, the Company and I agree to waive our respective rights to have any claims regarding legally protected rights (as defined in the EDR Program booklet) decided in a court of law before a judge or jury, and instead are accepting the use of final and binding arbitration to resolve such claims.

(Doc. # 13-3, at 2.)  Neely was employed with Bechtel as a Field Planning and Scheduling Supervisor at a petrochemical plant project in Daya Bay, China.  (Pl.'s Resp. Br. 1.)  In December 2003, Neely was removed from this position, allegedly for performance reasons, and placed in a "holding status" on August 11, 2004.  (*Id.*; Def.'s Reply Br. 4.)  In November 2004, Neely was offered an assignment to a pipeline project in Trinidad, but he refused the position "because it was not a legitimate or comparable offer of employment" and was "designed to create a hardship" for him.  (Pl.'s Resp. Br. 2.)  Finally, on December 14, 2004, Neely's "holding status" expired and he was terminated.  (Pl.'s Resp. Br. 1.)

After his termination, Neely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") on February 3, 2005, alleging that his termination had been based on his age and disability or perceived disability.  (Doc. # 13-4, at 3.)  On December 14, 2005, Neely filed suit in this court bringing age and disability discrimination claims against Bechtel.  (Doc. # 13-5.)  On January 26, 2006, the parties jointly moved to dismiss (Doc. # 13-6) Neely's claims without prejudice and submit them to arbitration under the terms of the EDR Program, which Judge Fuller granted on February 1, 2006 (Doc. # 13-7).  These claims are currently being arbitrated.

Neely filed a second EEOC charge of discrimination against Bechtel on February 16,

2

2007, alleging that since his termination, Bechtel has not hired him into approximately thirty-five jobs because of his age, disability or perceived disability, and in retaliation for having filed his first EEOC charge and resulting lawsuit. (Doc. # 13-8.) After receiving a Notice of Right to Sue from the EEOC, Neely filed the instant suit against Bechtel on October 9, 2007, alleging age discrimination, disability discrimination, and retaliation through Bechtel's failure to hire him. (Doc. # 1.)

## II.    Discussion

The dispute primarily hinges on the interpretation of the portion of the arbitration agreement that limits its applicability to claims "which arise out of or relate to my employment (or its termination)." The referenced "employment (or its termination)" refers to Neely's employment with Bechtel from August 4, 1997, to his termination on December 14, 2004. The question before the court is whether his new claims, which are temporally post-employment claims, arise out of or relate to his previous employment or its termination.

### A.    <u>Failure to Hire Claims - Disability and Age</u>

The defendants make four primary arguments in favor of arbitration: (1) Neely's qualifications and job performance from his previous employment at Bechtel will have a "significant impact" on his failure to hire claims; (2) Neely will be forced to examine his prior employment relationship with Bechtel in order to establish his failure to hire claims; (3) Neely's complaint contains allegations pertaining to his previous employment with Bechtel; and (4) it is in the interests of judicial economy to arbitrate these claims. (Def.'s

Mot. Br. 6-10.)  The court will now address these arguments.

The defendant cites *Hobley*, an unpublished D.C. Circuit case, and *Aspero*, a Sixth Circuit case, for the proposition that arbitration agreements cover post-employment conduct "if the claims 'involve significant aspects of the employment relationship.'"  *Hobley v. Ky. Fried Chicken, Inc.*, No. 04-7202, 2005 WL 3838163, at *1 (D.C. Cir. Dec. 22, 2005) (quoting *Morgan v. Smith Barney, Harris Upham & Co.*, 729 F.2d 1163, 1167 (8th Cir. 1984)); *see also Aspero v. Shearson Am. Express, Inc.*, 768 F.2d 106, 109 (6th Cir. 1985). Assuming this is the correct standard,[1] the claims at issue in these cases are distinguishable from Neely's failure to hire claims.

In *Aspero*, the court held that post-employment tort claims for defamation, invasion

---

[1]  The parties do not cite any Eleventh Circuit case law specifically on point regarding the arbitrability of post-employment conduct and the court is unable to find any.  However, an Eleventh Circuit case interpreting an almost identical arbitration clause is particularly instructive. *See Telecom Italia, SPA v. Wholesale Telecom Corp.*, 248 F.3d 1109 (11th Cir. 2001).  In *Telecom Italia*, the question was whether a tort claim alleged to be related to a contract was arbitrable.  *Id.* at 1111.  The arbitration provision stated, in relevant part, that "any dispute arising out of or relating to this service agreement" shall be settled by arbitration.  *Id.*  In order to interpret this provision, the court:

> [F]ocus[ed] on whether the tort or breach in question was an immediate, foreseeable result of the performance of contractual duties.  Disputes that are not related—*with at least some directness*—to performance of duties specified by the contract do not count as disputes "arising out of" the contract, and are not covered by the standard arbitration clause. . . . However, where the dispute occurs as a *fairly direct result* of the performance of contractual duties . . . , then the dispute can fairly be said to arise out of and relate to the contract in question, and arbitration is required.

*Id.* at 1116 (emphasis added).  To the extent this sets forth a different standard than *Aspero*, the court finds the disposition of Bechtel's motion would remain unchanged as explained below.

of privacy, and intentional infliction of emotional distress arose out of the plaintiff's employment or termination and were subject to arbitration. *Aspero*, 768 F.2d at 109. The test employed in determining arbitrability was "whether the resolution of the claim depends upon evaluation of a party's performance [as an employee]." *Id.* In *Hobley*, the court held that a post-employment false accusation claim involved significant aspects of his employment relationship and was therefore arbitrable. *Hobley*, 2005 WL 3838163, at *1. The *Hobley* court reasoned that "[a]ny determination with respect to this claim would entail consideration of numerous facts concerning [the plaintiff's] employment relationship and performance." *Id.* In other words, resolution of the claims at issue in *Aspero* and *Hobley* required the court to look back at the employment relationship.

Neely's failure to hire claims do not require such backward-looking examination. In order for a plaintiff to establish a *prima facie* failure to hire claim, he must show: (1) he is a member of a protected class, (2) he applied for and was qualified for an available position, (3) that he was rejected for the position, and (4) that the employer filled the position with a person outside of the protected class. *Walker v. Prudential Prop. & Cas. Ins. Co.*, 286 F.3d 1270, 1274-75 (11th Cir. 2002). Neither the establishment nor the defense of any of these elements necessarily requires an examination of Neely's previous employment with Bechtel.

Bechtel argues that Neely will "presumably" rely on his previous employment to establish his qualification and that part of their defense "may" involve an "examination . . . based to some extent" on his previous employment. (Def.'s Mot. Br. 7.) This argument is

5

admittedly speculative and undermined by the Bechtel's own admission with respect to the thirty-five positions for which Neely applied that they "are highly technical positions and no two positions are identical. Thus, being qualified for one position does not make an applicant qualified for an entirely different position." (Def.'s Reply Br. 5.) While Neely uses the term "rehire" throughout his complaint, (*see, e.g.*, Compl. ¶¶ 14, 21), this does not change the fact that the cause of action is for failing to hire him for new and different positions – not his old position. Therefore, Bechtel's own logic dictates that Neely's former employment would bear little weight as to whether he is qualified for any of the thirty-five new positions to which he has applied. Furthermore, it is entirely possible that Neely could establish his qualifications through myriad other ways having nothing to do with Bechtel, such as education, experience with other employers, or specialized training.

Whether using the rubric of *Aspero*, requiring involvement of *significant* aspects of the employment relationship, or that of *Telecom Italia*, requiring a claim to be a "fairly direct result" of the employment relationship, to determine whether a post-employment claim is arbitrable, neither rationale requires Neely to arbitrate his failure to hire claims. Neely's failure to hire claims could have arisen even if he had never previously worked for Bechtel. *See Telecom Italia*, 248 F.3d at 1116 (finding a tort claim to be non-arbitrable when the alleged tort could have occurred even if there had never been a contract containing an arbitration provision). While aspects of his previous employment may come up in the present claims, they are not significant.

6

Bechtel's second argument, which is directed only to the failure to hire claim based on a disability, is that Neely cannot establish this claim without an examination of his prior employment relationship. Bechtel conflates Neely's claim in his first lawsuit, which alleged improper termination based on a disability, with the failure to hire claim in his present lawsuit by stating "[t]hese claims will be determined by whether, *during Neely's employment with Bechtel*, Neely was disabled under the ADA or Bechtel perceived Neely as being disabled under the ADA." (Def.'s Mot. Br. 8 (emphasis added).) Bechtel focuses on the improper time frame relevant to Neely's failure to hire claim. It is not Bechtel's knowledge at the time of his termination that is at issue here, but rather its knowledge at the time it failed to hire Neely for each of the thirty-five jobs. While previous knowledge, or lack thereof, will surely be relevant to this particular claim, it is neither dispositive nor required. For instance, even if Bechtel had no knowledge of any disability at the time of Neely's employment, that is not to say it could not have acquired such knowledge in the time between his termination and when he applied for the new jobs.

Bechtel also argues that Neely's complaint contains allegations pertaining to his previous employment with Bechtel. A strikingly similar argument involving allegations in a complaint was made in *Telecom Italia* and rejected by the Eleventh Circuit: "Although these claims, if alleged as causes of action, would plainly be arbitrable as 'related to' the . . . contract, their recitation in support of the [tort claim] does not suffice to make the [tort] claim arbitrable." *Telecom Italia*, 248 F.3d at 1116. Similarly, the recitation of allegations

pertaining to Neely's previous employment with Bechtel as background evidence does not render his failure to hire claims arbitrable.

Finally, Bechtel makes an appealing argument that ordering this matter to arbitration would be in the interest of judicial economy because the parties are already engaged in arbitration on Neely's previous employment claim, and allowing the action to proceed in this court will lead to a danger of inconsistent results. (Def.'s Mot. Br. 10.) Although this argument hinges precariously on a mere possibility,[2] it fails for a more basic reason. The United States Supreme Court has instructed that "[i]f otherwise required, arbitration must be ordered 'even where the result would be the possibly inefficient maintenance of separate proceedings in different forums.'" *Telecom Italia*, 248 F.3d at 1117 (quoting *Dean Witter Reynolds v. Byrd*, 470 U.S. 213, 217 (1985)). What is possibly inefficient for the goose is possibly inefficient for the gander and, accordingly, judicial economy must step aside in favor of straightforward contract interpretation. Because Neely's post-employment failure to hire claims are not subject to his previous arbitration agreement, he cannot be required to submit them to arbitration. *Id.* at 1114 ("'[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" (quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960))). In this instance, judicial economy is of little consequence, and the defendant's argument to the contrary fails.

---

[2] That possibility is having the present claims consolidated into the currently pending arbitration. If that did not happen, the same judicial inefficiencies would occur, except the cost would shift to another tribunal.

### B.    Retaliation Claim

Neely's retaliation claim differs significantly from his failure to hire claims because Neely *must* involve significant aspects of his employment relationship in order to establish his retaliation claim.  The *prima facie* elements of such a claim require the plaintiff to establish that he engaged in a statutorily protected expression, that he suffered an adverse employment action, and that there is some causal relation between the two events.  *Cooper v. Southern Co.*, 390 F.3d 695, 740 (11th Cir. 2004).  Neely identifies three statutorily protected expressions: (1) complaining about Bechtel's discriminatory employment practices, (2) filing his first EEOC charge, and (3) filing his first lawsuit.  (*See* Doc. # 13-8.)

Each of these expressions is directly related to his employment with Bechtel – one of them appears to have even occurred during his employment with Bechtel (complaining) and the other two are already under arbitration.  Unlike his failure to hire claims, his retaliation claim could not have arisen were it not for Neely's prior employment with Bechtel because without it, there never would have been an initial EEOC charge or lawsuit.  Furthermore, establishing the required causal connection would necessarily link or, in the words of the arbitration agreement, relate his retaliation claim to the protected expressions that arose from his employment.  Therefore, his retaliation claim relates to or arises out of his previous employment or termination with Bechtel and is subject to arbitration.

### C.    No Stay for Nonarbitrable Claims

In addition to their motion to compel arbitration, the defendants moved to stay the

proceedings pending the outcome of arbitration. Courts have discretion to stay nonarbitrable claims and usually refuse to do so "when it is feasible to proceed with the litigation." *Klay v. All Defendants*, 389 F.3d 1191, 1204 (11th Cir. 2004). The "crucial" determination is "whether arbitrable claims predominate or whether the outcome of the nonarbitrable claims will depend upon the arbitrator's decision." *Id.* Here, the plaintiff is not predominantly advancing arbitrable claims because two of his three claims will properly proceed before this court. Also, Neely's failure to hire claims do not depend upon the outcome of the retaliation claim. Therefore, the interest of resolving the dispute in a timely manner outweighs any concern about parallel proceedings and the motion to stay proceedings is denied as to the failure to hire claims. *See id.* ("'[O]nce it is decided that the two proceedings are to go forward independently, the concern for speedy resolution suggests that neither should be delayed.'" (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 225 (1985) (White, J., concurring))).

## III.   Conclusion

Therefore, for the reasons set forth above, it is ORDERED that:

1.   Bechtel's Motion to Compel Arbitration (Doc. # 13) is GRANTED in part and DENIED in part as follows:

   a.   GRANTED as to the retaliation claim (Count Three) and all parties shall proceed with arbitration on this claim in the manner provided for in the arbitration agreement;

10

       b.     DENIED as to the failure to hire claims (Counts One and Two).

2.     Bechtel's Motion to Stay Proceedings (Doc. # 13) is GRANTED in part and DENIED in part as follows:

       a.     GRANTED as to the retaliation claim (Count Three);

       b.     DENIED as to the failure to hire claims (Counts One and Two).

3.     The parties shall file a jointly-prepared status report detailing the status of the arbitration of the retaliation claim every ninety days, beginning **August 31, 2008**.

DONE this 20th day of May, 2008.

                   /s/   W.  Keith Watkins
                 UNITED STATES DISTRICT JUDGE